# EXHIBIT A

## Complaint

*Served by process*
*server (by hand)*
*-5/23/19 @ 2:58pm*
*-DML*



# FRED MILLER

## Macomb County
## Clerk/ Register of Deeds

Chief Deputy Clerk                                        Deputy Register of Deeds

TO:        Court Customer
FROM:      Macomb County Clerk / Register of Deeds

CIRCUIT COURT CASE NUMBER:

JUDGE:

---

This is to inform you that the above mentioned case is deemed an eFiling case pursuant to Administrative Order No. 2010-06.

It is MANDATORY that all further filings in this matter are to be filed electronically through the court's eFiling website at:

   http:// mifile.courts.michigan.gov

Registration instructions, filing instructions, the administrative order and frequently asked questions can be found on the court's website at:

   http://circuitcourt.macombgov.org/CircuitCourt-eFilingResources

All parties must register with the court and opposing parties one e-mail address for service. Service will be provided electronically to this email address. All parties must also register this email address with the TruFiling e-filing system. Each individual bears the responsibility for the accuracy of the registered email address.

For TrueFiling technical support. Please call 1-855-959-8868 or send an email to support@truefiling.com.

It is required that you serve this notification to all parties when perfecting service on the complaint. Also if you have not previously provided your email address to our office when submitting documents for filing, it is now required that you furnish it in order for us to update our records accordingly.

---

If you need help in submitting your filing electronically, assistance is available in the Circuit Court I.T. Department on the 6th Floor. Computers, scanners and staff are available to assist you during normal business hours 8 a.m- 4:30p.m.

---

Clerk's Office
40 North Main Street 1st floor, Mount Clemens, MI 48043
586-469-5120, clerksoffice@macombgov.org
clerk.macombgov.org

Register of Deeds
120 N. Main Street Mount Clemens, MI 48043
586-469-7953, kregisterofdeeds@macombgov.org
rod.macombgov.org

112416



Third Party Service
FOXMORE
11503 Allecingie PKWY, 3rd Fl
Richmond, VA 23235
804-379-5500

# SERVE

| Approved. SCAO | | Original - Court<br>1st copy - Defendant | 2nd copy - Plaintiff<br>3rd copy - Return |
|---|---|---|---|

| **STATE OF MICHIGAN** | | | **CASE NO.** |
|---|---|---|---|
| 16th | **JUDICIAL DISTRICT**<br>**JUDICIAL CIRCUIT**<br>**COUNTY PROBATE** | **SUMMONS** | 19- 1516 -CK |

| Court address | |
|---|---|
| 40 N Main St. Mt Clemens, MI 48043 | **CARL J. MARLINGA**  Court telephone no.<br>(586) 469-5208 |

| Plaintiff's name(s), address(es), and telephone no(s) | | Defendant's name(s), address(es), and telephone no(s). |
|---|---|---|
| Premier Financial Consulting LLC | v | HMR Funding, LLC and Velocity Medical Receivables<br>Solutions, LLC<br>jointly and severally<br><br>9211 Arboretum Prkwy Ste 500<br>Richmond VA 23236 |

| Plaintiff's attorney, bar no., address, and telephone no |
|---|
| Jan Jeffrey Rubinstein (P57937)<br>30150 Telegraph Rd., Ste 444<br>Bingham Farms, MI 48025<br>(248) 220-1415 |

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

**Domestic Relations Case**

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. Attached is a completed case inventory (form MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

**Civil Case**

☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.

☑ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☐ this court, ☐ _____ Court, where

it was given case number _____ and assigned to Judge _____

The action ☐ remains ☐ is no longer pending.

Summons section completed by court clerk. | **SUMMONS** |

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. YOU HAVE 21 DAYS after receiving this summons and a copy of the complaint to file a written answer with the court and serve a copy on the other party or take other lawful action with the court (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date | Expiration date* | Court clerk |
|---|---|---|
| APR 19 2019 -- | JUL 1 9 2019 | _Fred Miller_ |

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

MC 01  (8/18)  **SUMMONS**                                      MCR 1.109(D), MCR 2.102(B), MCR 2.104, MCR 2.105

STATE OF MICHIGAN
IN THE MACOMB COUNTY CIRCUIT COURT

PREMIER FINANCIAL CONSULTING, LLC,
a Michigan limited liability company,

     Plaintiff,

- vs -

HMR FUNDING, LLC
a Virginia limited liability company,
VELOCITY MEDICAL RECEIVABLES SOLUTIONS, LLC,
a Delaware limited liability company,

     jointly and severally,

     Defendants.

Case No.: 19- 516-CK
Hon.: CARL J. MARLINGA

**RECEIVED**

APR 1 9 2019

FRED MILLER
Macomb County Clerk/

THE RUBINSTEIN LAW FIRM
Jan Jeffrey Rubinstein (P57937)
Ryan P. Richardville (P77335)
Attorneys for Plaintiff
30150 Telegraph Rd., Ste. 444
Bingham Farms, MI 48025
(248) 220-1415

## COMPLAINT AND JURY DEMAND

     There is no other pending or resolved civil action between these parties arising out of the transaction or occurrence alleged in the Complaint.

     NOW COMES Plaintiff, PREMIER FINANCIAL CONSULTING, LLC, by and through its attorneys, THE RUBINSTEIN LAW FIRM, and for their Complaint and Jury Demand state the following in support:

1

## JURISDICTION AND VENUE

1. Plaintiff, PREMIER FINANCIAL CONSULTING, LLC, is a Michigan limited liability company doing business at 17681 Montage West, Clinton Township, MI 48038.

2. Defendant, HMR FUNDING, LLC (hereafter "HMR"), is a Virginia limited liability company doing business at 9211 Forest Hill Avenue, Suite 101 Richmond, Virginia 23235.

3. Defendant, VELOCITY MEDICAL RECEIVABLES SOLUTIONS, LLC (hereafter "VMRS"), is a Delaware limited liability company with a principal place of business at 9211 Arboretum Parkway, Suite 500 Richmond, VA 23236.

4. That the events giving rise to the present action occurred in Macomb County, Michigan.

5. That the amount in controversy exceeds Twenty-Five Thousand Dollars ($25,000.00).

6. Jurisdiction and Venue are proper before this Court.

## BACKGROUND FACTS

7. Plaintiff incorporates and realleges all above paragraphs as if set forth in full herein.

8. Defendants, HMR and VMRS, are in the business of purchasing medical and personal injury receivables and working with clients on collection efforts.

9. Plaintiff is in the business of providing to Defendants potential clients who have a book of receivables which Defendants may choose to purchase. Upon purchase by Defendant, Plaintiff is to receive a commission.

10. Plaintiff and Defendant, HMR, entered into a Confidential Nondisclosure/Noncircumvent Agreement on or about July 20, 2017. (Exhibit "A"). The agreement set forth that Plaintiff was to be paid based upon the following:

2

3. Compensation

In the event the Funder [HMR] agrees to underwrite and purchase from an Introduced Medical Provider accounts receivables presented by ARC during the term of this Agreement, Funder shall pay ARC and Premier for services performed under this agreement as follows:

(a). To be determined and accepted by all three Parties prior to Funder agreeing to purchase receivables, and incorporated hereto by written amendment·that shall acknowledge this agreement.

(b). Funder agrees and acknowledges that neither ARC nor Premier is hereby making any representation or warranty, express or implied, as to the accuracy or completeness of the information provided and that Funder assumes all underwriting conclusions and responsibilities for the purchases of said accounts receivables. Funder agrees to hold ARC and Premier harmless, and that ARC and Premier shall not be responsible for reimbursement to Funder, for any broker fees, any lost or any under-performed accounts receivables purchased by the Funder.

11. Thereafter, Plaintiff and Defendant, VMRS, entered into a Referral Fee Agreement on or

about January 10, 2019.  (Exhibit "B").  That agreement was also entered into by and

between HMR through the language in the contract and that VMRS was an "Affiliate" as

defined in the contract.

12. Specifically, Plaintiff was to be compensated and "Affiliate" is defined as follows:

3. Compensation

(a) Finder's Fee.  In consideration for the services rendered by Finder [Premier] hereunder, Finder shall receive compensation ("Finder's Fee") on each purchase by Company or Affiliate of a Medical Receivable from an Introduced Medical Provider during the Term of this Agreement, or two years from a termination of this Agreement under Section 9(c), in an amount equal to the product of the funded amount paid by Company or its Affiliate for such Medical Receivable multiplied by the applicable commission percentage set forth on Schedule 1; provided that Finder shall not be entitled to receive any Finder's Fees owing but not yet paid following a termination of this Agreement by Company pursuant to Section 9(b).  Any Finder's fee that is owing to Finder hereunder shall be paid within ten (10) days of Company or its Affiliate's actual payment to the Introduced Medical Provider of the funded amount for the corresponding Medical Receivables. Upon request, Company shall provide to Finder adequate documentation demonstrating that all Finder's Fee due and owing has been paid.

(b) <u>Payment of Finder's Fee.</u> Company or its Affiliates may consummate the purchase of the Medical Receivable. If Company purchases a Medical Receivable from an Introduced Medical Provider during the Term then only Company shall be obligated to pay the Finder's Fee. If the Affiliate purchases and Medical Receivable from an Introduced Medical Provider during the Term then only the Affiliate shall be obligated to pay the Finder's Fee. For purposes of this Agreement, the term "Affiliate" means any entity that directly or indirectly (through one or more intermediaries) controls, is controlled by, or is under common control with Company.

13. That Defendants HMR and VMRS are Affiliates as defined in Exhibit "B" as the entities

are directly or indirectly controlled by or under common control.

14. That Defendant, HMR's, principal is Mark G. Guedri. Defendant, VMRS's, Chief

Executive Officer is also Mark G. Guedri.

## COUNT I – BREACH OF CONTRACT AGAINST HMR AND VMRS

15. Plaintiff incorporates and realleges all above paragraphs as if set forth in full herein.

16. Plaintiff performed all of his obligations pursuant to the contracts as set forth in Exhibits

"A" and "B."

17. Pursuant to the Contracts, Plaintiff supplied on numerous occasions to both Defendants,

HMR and VMRS, clients whom Defendants purchased medical receivables. Those clients

include, and are not limited to the following:

a. NextGen

b. Cresentox

c. Livonia Pharmacy

d. First National Rehab

e. DIPMM

f. Huraibi

g. Abi Home Health

h. Fountain View

i. Beta/Alpha PT

j. IINN

4

k.  Focus Point

l.  Star Pain

m. Oakland P/T

n.  Choice P/T

o.  Advance Tox

p.  City Express

q.  Rite Way Rehab

r.  First Response Transportation

s.  Integra Labs

t.  TX ASC

u.  Dr. Michael Roberts – Orthopedic Surgeon

v.  Mike Molloy

w. Delta PT

x.  Operation Wellness

y.  SEMI

z.  Med Direct

aa. Star Pain and Rehab – Multiple practices

bb. Focus Point

cc. Blake Barber

18. That Defendants breached the contracts by failing, refusing, and/or neglecting to remit the commissions for the clients procured by Plaintiff pursuant to the contracts.

19.  As a direct and proximate result of Defendants' breaches of the contracts, Plaintiff has suffered and continues to suffer damages.

WHEREFORE Plaintiff, PREMIER FINANCIAL CONSULTING, LLC, respectfully requests that this Court enter a Judgment in its favor and against Defendants, HMR FUNDING, LLC and VELOCITY MEDICAL RECEIVABLES SOLUTIONS, LLC, jointly and severally, in an amount in excess of $25,000.00 together with all applicable costs, interest, and attorney's fees, and further order any

other such additional relief that this Court deems necessary and just based upon the circumstances herein.

### COUNT II – VIOLATION OF THE SALES COMMISSION ACT AGAINST HMR AND VMRS

20. Plaintiff incorporates and realleges all above paragraphs as if set forth in full herein.

21. Plaintiff was engaged by Defendants, HMR and VMRS, as a "Finder" to introduce and procure books of business to Defendants for purchase of medical receivables from clients brought to Defendants through Plaintiff.

22. Defendants agreed to pay to Plaintiff a commission for accounts which Plaintiff introduced and Defendants engaged in purchasing medical receivables pursuant to Exhibit "B" Schedule I – Applicable Commission Percentage.

23. Plaintiff dutifully performed its tasks pursuant to the contracts by "finding" numerous clients whom Defendants engaged and funded including, but not limited to those as set forth in paragraph 17 a – cc.

24. Defendants have failed, refused, and or neglected to pay to Plaintiff the commissions due for the aforementioned sales.

25. Defendants' failure to pay Plaintiff sales commissions entitled Plaintiff to double the amount of commissions due or $100,000.00, whichever is less, as well as mandatory costs and reasonable attorney fees pursuant to MCL §600.2961.

WHEREFORE Plaintiff, PREMIER FINANCIAL CONSULTING, LLC, respectfully requests that this Honorable Court enter Judgment in its favor and against Defendants HMR FUNDING, LLC and VELOCITY MEDICAL RECEIVABLES SOLUTIONS, LLC, jointly and severally, in an amount in excess of $25,000.00 together with all applicable costs, interest, and attorney's fees, and further award

any other such additional relief that this Court deems necessary and just based upon the circumstances herein.

## COUNT III – ACCOUNTING AGAINST HMR AND VMRS

26. Plaintiff incorporates and realleges all above paragraphs as if set forth in full herein.

27. Plaintiff was engaged by Defendants, HMR and VMRS, as a "Finder" to introduce and procure books of business to Defendants for purchase of medical receivables from clients brought to Defendants through Plaintiff.

28. Plaintiff dutifully performed its tasks pursuant to the contracts by "finding" numerous clients whom Defendants engaged and funded including, but not limited to those as set forth in paragraph 17 a – cc.

29. Defendants have failed, refused, and/or neglected to communicate with Plaintiff in addition to failing to remit commissions pursuant to the contracts. Defendants have ceased making regular reports to Plaintiff. Upon information and belief, Defendants have purchased books of business and funded an unknown number of clients who were presented to Defendants solely through the efforts of Plaintiff.

30. Defendants have failed and refused to provide information, including financial information, regarding the clients which were brought to Defendants through the efforts of Plaintiff.

31. That as a result of the above-stated acts Plaintiff cannot, even with liberal discovery, reasonably be expected to ascertain and determine the extent of business conducted by Defendants in regard to the clients which Plaintiff provided.

32. Furthermore, Plaintiff cannot reasonably ascertain the current accurate status of the clients and potential clients sent through Plaintiff to Defendants due to Defendants' number and

varied types of business activities, the technical nature of the business conducted, and the relationships between Defendant and those with whom it has dealt.

33. Plaintiff does not know what amounts, if any, may be revealed by such accounting as being owed to Plaintiff and, thus, makes no specific demand for monetary relief at the present time.

WHEREFORE, Plaintiff PREMIER FINANCIAL CONSULTING, LLC, respectfully requests that this Honorable Court enter Judgment in its favor and against Defendants HMR FUNDING, LLC and VELOCITY MEDICAL RECEIVABLES SOLUTIONS, LLC, jointly and severally, to prepare, at their sole expense, a true and accurate accounting of all of the activities and assets of Defendants including but not limited to the clients procured through Plaintiff, all of the activities Defendants have taken in regard to those clients, and the specific purchase and funding amounts Defendants have remitted on behalf of the clients procured through Plaintiff. In addition, Plaintiff requests this Court to enter a Judgment in its favor and against Defendants, jointly and severally, in an amount in excess of $25,000.00 together with all applicable costs, interest, and attorney's fees, and further award any other such additional relief that this Court deems necessary and just based upon the circumstances herein.

Respectfully submitted,
THE RUBINSTEIN LAW FIRM

By /s/: _____
Ian Jeffrey Rubinstein (P57937)

Dated: April 15, 2019

## JURY DEMAND

Please Take Notice that Plaintiffs, PREMIER FINANCIAL CONSULTING, LLC, hereby makes a demand for a jury trial pursuant to MCR 2.508(B).

Respectfully submitted,
THE RUBINSTEIN LAW FIRM

By /s/:_____
Ian Jeffrey Rubinstein (P57937)

Dated: April 15, 2019

9

# Exhibit "A"

RECEIVED

APR 1 9 2019

FRED MILLER
Macomb County Clerk

CONFIDENTIAL NONDISCLOSURE/NONCIRCUMVENT AGREEMENT

THIS CONFIDENTIAL NONDISCLOSURE AGREEMENT is made and entered as of July 20, 2017, by and among HMR Funding, LLC, a Delaware limited liability company (herein referred to as "Funder"), IBMedia1, LLC, dba ARClaims, LLC a Florida company (herein referred to as "ARC"), and Premier Financial Consulting, LLC a Michigan company ("Premier"). Funder, ARC, and Premier are collectively herein referred to as "Party" or "Parties."

## BACKGROUND

Each Party hereto desires to obtain certain confidential and proprietary information from the other Party for the sole purpose of evaluating whether or on what terms to consummate a proposed collaborative, strategic alignment and/or joint venture with respect to the advancement and/or purchase of medical care accounts receivables, such as, but not limited to: ASCs, Hospitals, surgeons, pain management, pharmacy, physical therapy, and imaging services. Each Party is willing to provide such confidential and proprietary information to the other Party for the limited purpose and under the terms and conditions set forth herein.

## TERMS

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth herein, the parties hereto agree as follows:

1.    Confidential Information

The term "Confidential Information" as used herein shall mean all non-public proprietary or confidential financial statements, tax returns, names of principals and accounts, business plans and practices, present and future products and policies, contracts, and other business or financial information concerning or relating to the parties, or their respective Affiliates (as defined below) which is disclosed or made available by either Party to the other Party hereunder. For purposes of this Agreement, each Party disclosing Confidential Information to another Party is referred to herein as the "Disclosing Party," and the Party to whom such Confidential Information is disclosed is referred to herein as the "Receiving Party." The term "Confidential Information" does not include information that (i) is already in a Receiving Parties possession or becomes available to a Receiving Party from a source other than the Disclosing Party, provided that such Information was lawfully obtained and is not known by the Receiving Party to be subject to another confidentiality agreement with or other obligation of secrecy to the Disclosing Party or another person, (ii) becomes generally available to the public other than directly or indirectly as a result of a disclosure by the Receiving Party or its representatives, or (iii) was or is independently developed by the Receiving Party or its Affiliates without using any Confidential Information of the Disclosing Party. For purposes of this Agreement, the term "Affiliates" means any person or entity controlling, controlled by or under common control with Parties.

2. NON-CIRCUMVENTION

During the term of this Agreement, the Funder agrees not to contact, initiate contact, or

attempt to do business with, at any time, either directly or indirectly, any of the following: any medical providers approved in writing by the Funder and formally introduced by ARC to the Funder relating to a proposed sale and purchase of accounts receivable (an "Introduced Medical Provider"), and any officers, directors, shareholders, consultants, attorneys, employees, agents and/or other affiliates of any Introduced Medical Provider, for the purpose of circumventing its obligations to ARC under this Agreement, the result of which shall prohibit ARC from realizing a profit, fees, or otherwise on account of the purchase of accounts receivable from such Introduced Medical Providers in the Funder, without the specific written approval of ARC; such approval will be specifically granted in written form by ARC on a case-by-case basis. If such circumvention shall occur, ARC shall be entitled to any fees which it would have realized relating to such transaction under the terms of this Agreement. This paragraph shall not prohibit the Funder or any of its Affiliates from contacting, or proceeding with any business opportunities with anyone with whom the Funder or any of its Affiliates has had a previous relationship and/or whom the Funder or any of its Affiliates was introduced by a source other than ARC, unless the Funder or its Affiliate was introduced by ARC first.

### 3. Compensation

In the event the Funder agrees to underwrite and purchase from an Introduced Medical Provider accounts receivables presented by ARC, during the term of this Agreement, Funder shall pay ARC and Premier for services performed under this agreement as follows:

    (a). To be determined and accepted by all three Parties prior to Funder agreeing to purchase receivables, and incorporated hereto by written amendment that shall acknowledge this agreement.

    (b). Funder agrees and acknowledges that neither ARC nor Premier is hereby making any representation or warranty, express or implied, as to the accuracy or completeness of the information provided and that Funder assumes all underwriting conclusions and responsibilities for the purchases of said accounts receivables. Funder agrees to hold ARC and Premier harmless, and that ARC and Premier shall not be responsible for reimbursement to Funder, for any broker fees, any lost or any under-performed accounts receivables purchased by the Funder.

### 4.    Protected Health Information

The Parties specifically acknowledges that during the tenure of the business relationship with each other, protected health information may be distributed through, but not limited to: billing information and other medical records that are regularly included within the presented accounts receivables. Each Party agrees that it will protect said information from disclosure or publication in accordance with the Health Insurance Portability and Accountability Act (HIPAA). This requirement is separate from ARC's and Premier's obligations regarding Funder's confidential business information, and is an ongoing obligation not subject to any continuing business relationships or other time limitations contained within the Agreement.

### 5.    Term

This agreement is effective on the date written above, shall continue for an initial period

2

of one (1) year from the effective date and shall automatically renew in one (1) year increments thereafter unless either party provides written notice of non-renewal to the other party at least thirty (30) days prior to the expiration of the initial period or the then-current renewal term, as applicable. Notwithstanding the foregoing, all obligations of confidentiality shall survive the termination of this Agreement.

6.      Acknowledgement.

Each Party, in its capacity as the Receiving Party, acknowledges and agrees that the Confidential Information of each other Party, in its capacity as the Disclosing Party, is proprietary to, and a valuable trade secret of, the Disclosing Party, and that any disclosure or unauthorized use thereof will cause irreparable harm and loss to the Disclosing Party.

7.      Obligations of Secrecy. In consideration of the disclosure of Confidential Information, each Party, in its capacity as the Receiving Party, covenants and agrees as follows:

(a)  The Confidential Information received from another Party, in its capacity as the Disclosing Party, will be kept private and held in strictest confidence, except that any of such Confidential Information may be disclosed to any of the directors, officers, employees, representatives, advisors or other agents of the Receiving Party or its Affiliates (collectively "its Representatives") who need to know such information solely for the purpose of evaluating whether or on what terms to consummate a proposed transaction, it being understood that the Receiving Party shall inform its Representatives of the confidential nature of the Confidential Information and shall require its Representatives to hold such Confidential Information in confidence.

(b)  The Receiving Party shall return all Confidential Information, including all copies and records thereof, to the Disclosing Party upon demand, or a decision by the parties not to consummate a business transaction, whichever first occurs, with the exception that Confidential Information which is necessary for Receiving Party to continue its proper management and administration or to carry out its legal responsibilities.

8.      Secrecy of Negotiations

Without the prior written consent of each other Party, each Party will refrain from, and will direct its Representatives to refrain from, disclosing to any person who is not hereby authorized to receive the Confidential Information either the fact that discussions or negotiations are taking place between the parties or any of the terms, conditions or other facts with respect to any possible business transaction between the parties, including the status thereof.

9.      Survival

The restrictions and obligations of the parties under this Agreement shall survive any expiration, termination or cancellation hereof and shall continue to be binding upon, and inure to the benefit of, each other Party hereto, its successors, assigns, and affiliates.

10.     Termination

3

If any Party violates its obligations to be performed under this Agreement, and said violation is not remedied within fifteen (15) days after written notice of said violation is received by the violating Party, any other Party may terminate the agreement by sending a fifteen (15) days written notice.

In the event this agreement is terminated and within two (2) years after the date of termination the Founder purchases from an Introduced Medical Provider any accounts receivables presented by ARC; then ARC and Premier shall be entitled to all fees it would have received under this Agreement had such purchase occurred during the term of this agreement.

11.   Remedies

In the event of a breach or threatened breach by a Receiving Party or its Representatives of the provisions of this Agreement, the Disclosing Party shall be entitled to a preliminary and permanent injunction restraining the Receiving Party and its Representatives from disclosing or using, in whole or in part, any Confidential Information, and money damages. Nothing contained herein shall be construed as prohibiting the Disclosing Party from pursuing any other remedies available to it for such breach or threatened breach. In addition, the Disclosing Party will be entitled to payment of its legal fees and disbursements, court costs and other expenses of enforcing, defending or otherwise protecting its interests hereunder.

12.   Governing Law

This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida, excluding the laws of Florida relating to the resolution of conflict of laws of different jurisdictions.

13.   Waiver

The failure of the Disclosing Party to enforce at any time any of the provisions of this Agreement shall not be construed to be a waiver of those provisions or the right of the Disclosing Party thereafter to enforce those provisions.

14.   Counterparts

This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, but all of which shall be deemed to be a single instrument, and shall be effective when one or more counterparts have been signed by each of the parties.

[Signatures appear on the following page(s).]

4

IN WITNESS, WHEREOF, the parties hereto have executed this Agreement as of the date first written above.

HMR Funding, LLC

By: _____

Name: Mark G. Guedri

Address: 2900 Polo Parkway, Suite 200
Midlothian, VA 23113

IBMedia1, LLC dba ARClaims, LLC

By: _____

Name: Ihan Rodriguez, MGMBR/President

Address: 8815 Conroy Windermere Road #171 Orlando, FL 32835

Premier Financial Consulting, LLC

By: _____

Sal Jahad, Principal

17681 Montage West
Clinton Township, MI 48038

Exhibit "B"

## REFERRAL FEE AGREEMENT

THIS REFERRAL FEE AGREEMENT, dated as of January 10, 2019 (the "Agreement"), is entered into by and between Velocity Medical Receivables Solutions, LLC, a Delaware limited liability company having its principal place of business at 9211 Arboretum Parkway, Suite 500, Richmond, Virginia 23236 ("Company"), and Premier Financial Consulting, LLC, a Michigan limited liability company having its principal place of business at 17681 Montage West, Clinton Township, Michigan 48038 ("Finder", and together with Company, the "Parties", and each, a "Party").

WHEREAS, Company, directly and through its Affiliates (as defined in Section 3(b)), is in the business of purchasing portfolios of medical and healthcare receivables that arise out of medical and healthcare services provided to patients with pending personal injury claims ("Medical Receivables"); and

WHEREAS, Company desires to engage Finder to provide services to Company related to medical and healthcare providers who hold and desire to sell Medical Receivables ("Medical Providers"), and Finder desires to provide such services.

NOW, THEREFORE, in consideration of the promises set forth above and the terms below, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.   Engagement.

(a)   Company hereby engages Finder, and Finder hereby accepts such engagement, to provide to Company the services described in this Agreement with respect to purchases of Medical Receivables from Medical Provider during the Term (as defined in Section 9(a)), solely in accordance with the terms and conditions of this Agreement.

(b)   Finder and Company's engagement is non-exclusive. Company or its Affiliates may, in their sole discretion, engage any other person or company in connection with the purchase of Medical Receivables. Finder may be engaged or employed in any other business, trade, profession, or other activity which does not place Finder in a conflict of interest with Company or its Affiliates or violate the terms of this Agreement. Accordingly, Finder may engage with another person or company desiring to purchase Medical Receivables. However, to avoid a conflict of interest, Finder's non-exclusivity is limited. Finder agrees that during the Term it will not facilitate, communicate regarding, or play any role in the offer or sale of any Medical Receivable by a Medical Provider to any person or entity other than Company or its Affiliates unless such Medical Receivable has first been offered for sale to Company or its Affiliates and they have elected not to purchase such Medical Receivable.

(c)   Finder shall introduce Company to Medical Providers, but Finder may not offer to purchase, offer or purchase on behalf of Company or its Affiliates, or commit Company or its Affiliates to purchase, any Medical Receivables. Finder shall use reasonable efforts to advise Medical Providers of Finder's lack of authority to act on behalf of Company and its Affiliates.

(d)   The prices, terms and conditions under which Company or its Affiliates shall purchase or offer to purchase any Medical Receivables shall be determined by Company or such Affiliates in their sole discretion. Company and its Affiliates shall have the authority to control all discussions and negotiations regarding any proposed or actual purchase or offer to purchase Medical Receivables. Nothing in this Agreement shall obligate Company or its Affiliates to actually

1

purchase or offer to purchase any Medical Receivables or consummate any transaction with any Introduced Medical Provider (as defined in Section 2(a)(i)). Company or its Affiliates may terminate any negotiations or discussions at any time and have the right not to proceed with any purchase of Medical Receivables without any liability or obligation to pay any Finder's Fee (as defined in Section 3(a)) or other money to Finder.

2.    Services.

(a)    As a condition precedent to Finder's right to receive a Finder's Fee from Company, Finder shall perform those services reasonably necessary to facilitate Company's purchase of Medical Receivables from a Medical Provider, including without limitation the following. Should Finder fail or refuse to perform its obligations under this Agreement with respect to any Medical Receivable purchased from an Introduced Medical Provider, Company and its Affiliates may withhold some or all future Finder's Fees under this Agreement unless and until Finder performs those obligations with respect to each such Medical Receivable.

(i)    Introduction. Finder shall introduce Company to Medical Providers. Finder shall be deemed to have introduced a Medical Provider to Company for purposes of this Agreement (each such Medical Provider, an "**Introduced Medical Provider**") only if (i) during the Term, such Medical Provider is identified to Company in writing by Finder and approved by Company in writing, is formally introduced to Company by Finder or by an agent of Finder, meets Company's requirements to be qualified for the purchase of Medical Receivables, and enters into any required confidentiality or business associates agreement with Company for the exchange of information related to the purchase of Medical Receivables, and (ii) neither Company nor any of its Affiliates has had contact with, or conducted business with, such Medical Provider before being identified to Company by Finder. If the Company has had contact with, or conducted business with, a Medical Provider but has not been able to close any purchase, Company and Finder may agree that such Medical Provider will become an Introduced Medical Provider for Finder so that Finder may go and close them. As of the date of this Agreement, the Parties agree that the following medical providers are Introduced Medical Providers: Operation Wellness Group, LLC.

(ii)    Data Collection. Finder shall assist Company with the collection of data from an Introduced Medical Provider. Company shall determine, in its sole discretion, the nature, quality, format and transmission mechanism required for such data. For purposes of illustration, such data collection may include sending to an Introduced Medical Provider a historical collections template and facilitating Company's receipt of information required for pricing.

3.    Compensation.

(a)    Finder's Fee. In consideration for the services rendered by Finder hereunder, Finder shall receive compensation ("Finder's Fee") on each purchase by Company or its Affiliate of a Medical Receivable from an Introduced Medical Provider during the Term of this Agreement, or two years from a termination of this Agreement under Section 9(c), in an amount equal to the product of the funded amount paid by Company or its Affiliate for such Medical Receivable multiplied by the applicable commission percentage set forth on Schedule I; provided that Finder shall not be entitled to receive any Finder's Fees owing but not yet paid following a termination of this Agreement by Company pursuant to Section 9(b). Any Finder's Fee that is owing to Finder hereunder shall be paid within ten (10) days of Company or its Affiliate's actual payment to the Introduced Medical Provider of the funded amount for the corresponding Medical Receivables.

Upon request, Company shall provide to Finder adequate documentation demonstrating that all Finder's Fee due and owing has been paid.

(b)     Payment of Finder's Fee.  Company or its Affiliates may consummate the purchase of the Medical Receivable.  If Company purchases a Medical Receivable from an Introduced Medical Provider during the Term then only Company shall be obligated to pay the Finder's Fee.  If the Affiliate purchases a Medical Receivable from an Introduced Medical Provider during the Term then only the Affiliate shall be obligated to pay the Finder's Fee.  For purposes of this Agreement, the term "Affiliate" means any entity that directly or indirectly (through one or more intermediaries) controls, is controlled by, or is under common control with Company.

(c)     Finder's Fee Is Exclusive Compensation.  Notwithstanding any other term of this Agreement, under no circumstances shall Finder be entitled to any compensation, fee or money from Company or its Affiliate other than the Finder's Fee.  Accordingly, for example, Finder is solely responsible for any travel or other costs or expenses incurred by Finder in connection with its performance under this Agreement, and in no event shall Company or an Affiliate have any obligation to reimburse Finder for any such costs or expenses.  Notwithstanding the proceeding sentence, Finder may submit future expenses to Company for Company's approval, and in such case Company shall promptly reimburse Finder once the expenses are incurred and Finder has submitted proof.

(d)     No Additional Commission.  Finder acknowledges that to promote good business relationships between Introduced Medical Provider(s), Finder and Company, that Finder shall not receive any compensation, commission or fee from an Introduced Medical Provider.  Rather, Finder's sole compensation related to Company's purchase of Medical Receivables from Introduced Medical Provider shall be only the Finder's Fee provided for in this Agreement.

4.     Finder's Representations, Warranties, and Covenants.  Finder represents and warrants to the Company and its Affiliates, and agrees, as follows:

(a)     Finder has full right and authority to enter into this Agreement and to perform Finder's obligations hereunder, and the execution and delivery of this Agreement by Finder and the performance by Finder of Finder's obligations hereunder will not conflict with or breach any agreement, order or decree to which Finder is a party or by which Finder is bound.

(b)     Finder shall comply with all requirements imposed upon Finder by all applicable laws and regulations.  Without limiting the foregoing, Finder has not and will not knowingly or willfully solicit, receive, pay or offer to pay any remuneration, directly or indirectly, overtly or covertly, in cash or kind for the purpose of making or receiving any referral which violates any applicable anti-kickback law or self-referral law, including without limitation the Federal Health Care Program Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b), the Federal Prohibition Against Certain Referrals, commonly referred to as The Stark Law, 42 U.S.C. § 1395nn, or any applicable state anti-kickback or self-referral law or regulation.

5.     Independent Contractor.  Finder is an independent contractor of Company, and this Agreement shall not be construed to create any association, partnership, joint venture, employee or agency relationship between Finder and Company or any of its Affiliates for any purpose.  Finder has no authority (and shall not hold itself out as having authority) to bind Company or its Affiliates, and Finder shall not make any agreements or representations on behalf of the Company or its

3

Affiliates without Company's prior written consent. Without limiting the above, Finder will not be eligible to participate in any vacation, group medical or life insurance, disability, profit sharing or retirement benefits, or any other fringe benefits or benefit plans offered by Company or its Affiliates to its employees, and neither Company nor its Affiliates will be responsible for withholding or paying any income, payroll, Social Security or other federal, state or local taxes, making any insurance contributions, including unemployment or disability, or obtaining worker's compensation insurance on Finder's behalf. Finder shall be entitled to hire such sales and other professionals as Finder determines in its sole discretion. Should any such professionals become employed by Company, Company shall pay a Finder's Fee to Finder on each purchase by Company or its Affiliate of a Medical Receivable caused by such professional during the Term of this Agreement or during the two years following a termination of this Agreement under Section 9(c).

6.      Indemnification.  To the extent permitted by law, Finder shall indemnify, defend, and hold harmless Company and its Affiliates, and each of their respective directors, managers, officers, shareholders, members and employees, against any and all losses, damages, liabilities, deficiencies, claims, actions, judgments, settlements, interest, awards, penalties, fines, costs, or expenses of whatever kind, including reasonable attorneys' fees and the costs of enforcing any right to indemnification under this Agreement, arising out of or resulting from breach by Finder of any of its representations, warranties, or obligations in this Agreement or any claim of a third party related to Finder's performance or obligations under this Agreement. Finder shall be responsible for, and shall indemnify Company and its Affiliates against, any taxes or contributions, including penalties and interest, arising out of any compensation paid to Finder. Any persons employed or engaged by Finder in connection with the performance of Finder's obligations hereunder shall be Finder's employees or contractors, and Finder shall be fully responsible for them and indemnify Company and its Affiliates against any claims made by or on behalf of any such employees or contractors.

7.      Confidentiality. All non-public, confidential, or proprietary information of Company and its Affiliates, including, but not limited to, documents, data, business operations, customer lists, vendor lists, referral source lists, pricing, discounts or rebates, disclosed by Company or its Affiliates to Finder, whether disclosed orally or disclosed or accessed in written, electronic, or other form or media, and whether or not marked, designated, or otherwise identified as "confidential," in connection with this Agreement, as well as the terms and conditions and the existence of this Agreement, as well as any copies of such information and information created or compiled based upon such information, is confidential, solely for the use of performing this Agreement and may not be disclosed or copied unless authorized by Company in writing. Upon Company's request, Finder shall promptly return all documents and other materials received from Company and its Affiliates. Company shall be entitled to injunctive relief for any violation of this section. This section shall not apply to information that is: (a) in the public domain; (b) known to Finder at the time of disclosure; or (c) rightfully obtained by Finder on a non-confidential basis from a third party.  In addition, Finder agrees to refrain from making negative, derogatory or disparaging comments about Company and its Affiliates, and each of their respective directors, managers, officers, shareholders, members and employees, regardless of the outcome of any effort to purchase any Medical Receivable.

8.      Publicity and Announcements. Finder shall not (orally or in writing) publicly disclose or issue any press release or make any other public statement, or otherwise communicate with the media, concerning the existence of this Agreement or the subject matter hereof, without the prior written approval of Company, except to the extent that Finder (based upon the reasonable

4

advice of counsel) is required to make any public disclosure or filing with respect to the subject matter of this Agreement by applicable law.

9.      Term and Termination.

(a)     The term of this Agreement commences on the date of this Agreement and continues for a period of one (1) year, unless and until earlier terminated as provided under this Agreement (the "**Initial Term**"). Upon expiration of the Initial Term, this Agreement automatically renews for additional successive one (1) year terms unless and until either Party provides Notice (as defined in Section 10(a)) of nonrenewal at least fifteen (15) days prior to the end of the then-current term, or unless and until earlier terminated as provided under this Agreement. The Initial Term together with any such renewal term is referred to herein as the "**Term**".

(b)     In addition to any remedies that may be provided in this Agreement, either Party may terminate this Agreement with immediate effect upon Notice to the other party and the other party's failure to cure after 30 days, if the other party: (i) fails to pay any amount when due under this Agreement and such failure continues for ten (10) days after the other party's receipt of Notice of nonpayment; (ii) breaches or has not otherwise performed or complied with any of the terms of this Agreement, in whole or in part; or (iii) files a petition for bankruptcy, or commences or has commenced against it proceedings relating to bankruptcy, receivership, reorganization, assignment for the benefit of creditors, or insolvency.

(c)     In addition to any remedies that may be provided in this Agreement, either Party, in its sole discretion, may terminate this Agreement at any time, with or without cause, by providing at least fifteen (15) days' prior Notice to the other Party.

10.     Additional General Terms.

(a)     All notices, requests, consents, claims, demands, waivers, summons and other legal process, and other similar types of communications hereunder (each, a "**Notice**") must be in writing and addressed to the relevant Party at the address set forth on the first page of this Agreement (or to such other address that may be designated by the receiving Party from time to time in accordance with this Section 10(a)). All Notices must be delivered by personal delivery, nationally recognized overnight courier (with all fees pre-paid), or certified or registered mail (in each case, return receipt requested, postage prepaid). A Notice is effective only (i) upon receipt by the receiving Party and (ii) if the Party giving the Notice has complied with the requirements of this Section 10(a).

(b)     This Agreement and all matters arising out of or relating to this Agreement, including without limitation the entering into of this Agreement and any Claims (as defined in Section 10(d)) whether in tort or contract, are governed by, and construed in accordance with, the laws of the Commonwealth of Virginia, without regard to the conflict of laws provisions thereof. Any legal suit, action or proceeding between the Parties shall be instituted only in the United States District Court for the Eastern District of Virginia, Richmond Division or the state courts located in the County of Chesterfield, Virginia. Each Party hereby irrevocably submits to the exclusive venue and jurisdiction of such courts in any such suit, action, or proceeding. Any Claim by Finder against Company or its Affiliate shall be deemed waived unless Finder gives Company written notice of such Claim within fifteen days of Finder's discovery of the facts or circumstances giving rise to such Claim, or within fifteen days of when Finder should have, through the use of reasonable due

5

diligence, discovered the existence of such Claim, whichever is shorter. To the extent permitted by law, Company's and its Affiliates' liability to Finder is expressly limited to the amount of any Finder's Fee owing Finder.

(c)    This Agreement, and each of the terms and provisions hereof, may only be amended, modified, waived, or supplemented by an agreement in writing signed by each Party. Finder shall not assign, transfer, delegate, or subcontract any of its rights or obligations under this Agreement without the prior written consent of Company. Any purported assignment or delegation in violation of this section shall be null and void. Company may at any time assign, transfer, or subcontract any or all of its rights or obligations under this Agreement without Finder's prior written consent. This Agreement will inure to the benefit of and be binding upon each of the Parties and each of their respective permitted successors and permitted assigns. This Agreement may be executed in counterparts, each of which is deemed an original, but all of which together constitutes one and the same agreement. Delivery of an executed counterpart of this Agreement electronically or by facsimile shall be effective as delivery of an original executed counterpart of this Agreement.

(d)    If any term or provision of this Agreement is invalid, illegal or unenforceable in any jurisdiction, such invalidity, illegality, or unenforceability shall not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction. This Agreement constitutes the sole and entire agreement of the Parties with respect to the subject matter contained herein and supersedes all prior and contemporaneous understandings, agreements, representations, and warranties, both written and oral, between Finder and Company or its Affiliates with respect to such subject matter. Without limiting the foregoing, the terms of this Agreement shall apply with respect to any Medical Receivables that are purchased during the Term by Company or its Affiliates, or have been purchased already, from any Medical Provider that became an Introduced Medical Provider prior to the date of this Agreement. Accordingly, upon the Parties' entering into this Agreement, and except for the obligations required herein, Finder hereby releases Company and its Affiliates, and each of their respective directors, managers, officers, shareholders, members and employees, from any Claim of whatever kind or nature, known or unknown, which it has, or has had, against them, up to the date of this Agreement. "Claim" as used in this Agreement means any assertion of a right (whether an existing, contingent or provisional right), including without limitation any causes of action, suits, debts, payments, rents, dues, accounts, reckonings, bonds, bills, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments (whether issued by a court, arbitrator, or other person or body), executions, attorney's fee claim, statutory claim and/or any demand whatsoever, in law or in equity, in tort or in contract. Except as otherwise expressly provided in this Agreement, the parties do not confer any rights or remedies upon any person other than the Parties and their respective successors and permitted assigns.

[Signatures appear on the following page(s).]

IN WITNESS WHEREOF, the Parties have executed this Referral Fee Agreement as of the date first written above.

VELOCITY MEDICAL RECEIVABLES
SOLUTIONS, LLC

By: _____

(on behalf of Velocity Medical
Receivables Solutions, LLC and each
Affiliate that purchases a Medical
Receivable)

Name: Mark G. Guedri

Title:   Chief Executive Officer


PREMIER FINANCIAL CONSULTING, LLC

By: _____

Name: Salah Jahad

Title: Principal and Authorized Agent

7

Schedule I

Applicable Commission Percentage

| MOPA (Multiple on Purchased Assets) | Comm % |
|---|---|
| MOPA less than 1.6 | 2.50% |
| MOPA of 1.6 thru 1.699 | 3.00% |
| MOPA of 1.7 thru 1.799 | 3.50% |
| MOPA of 1.8 thru 1.899 | 4.00% |
| MOPA of 1.9 thru 1.999 | 4.50% |
| MOPA of 2.00 and above | 5.00% |

The Applicable Commission Percentage is based on MOPA, because a higher MOPA means the portfolio purchase is a more favorable deal for the Company than a portfolio purchase with a lower MOPA. MOPA is equal to the anticipated gross collections based on historic collections % rate divided by the total amount anticipated to be paid to the medical provider (initial purchase price PLUS post hurdle split anticipated to be paid to medical provider based on historic collection rate).

For Example:

| | | |
|---|---|---|
| a. | Aggregate Invoice Amount | $5,000,000 |
| b. | Purchase Price | $1,000,000 |
| c. | Historic Collection | 60% |
| d. | Anticipated Collection | $3,000,000 |
| e. | Hurdle X | 2.0 |
| f. | Hurdle $ | $2,000,000 |
| g. | Post-Hurdle $ | $1,000,000 |
| h. | M.P. P-H Split % | 50% |
| i. | M.P. P-H Split $ | $500,000 |
| j. | Anticipated Total Paid to M.P | $1,500,000 |
| k. | MOPA Formula | d divided by j |
| l. | MOPA Formula | $3,000,000/$1,500,000 |
| m. | MOPA  = | 2.00 |

PREMIER FINANCIAL CONSULTING LLC VS 1

Service, Submitted, and File

STATE OF MICHIGAN
IN THE MACOMB COUNTY CIRCUIT COURT

PREMIER FINANCIAL CONSULTING, LLC,
a Michigan limited liability company,

      Plaintiff,

- vs -

HMR FUNDING, LLC
a Virginia limited liability company,
VELOCITY MEDICAL RECEIVABLES
SOLUTIONS, LLC, a Delaware limited
liability company,

      jointly and severally,

      Defendants.

Case No.: 19-1516-CK
Hon.: Carl J. Marlinga

_____/

THE RUBINSTEIN LAW FIRM
Jan Jeffrey Rubinstein (P57937)
Ryan P. Richardville (P77335)
Attorneys for Plaintiff
30150 Telegraph Rd., Ste. 444
Bingham Farms, MI 48025
(248) 220-1415

_____/

## FIRST AMENDED COMPLAINT AND JURY DEMAND

    Now COMES Plaintiff, PREMIER FINANCIAL CONSULTING, LLC, by and through its

attorneys, THE RUBINSTEIN LAW FIRM, and for its First Amended Complaint and Jury Demand

state the following in support:

## JURISDICTION AND VENUE

    1.  Plaintiff, PREMIER FINANCIAL CONSULTING, LLC, is a Michigan limited liability company

doing business at 17681 Montage West, Clinton Township, MI 48038.

1

2. Defendant, HMR FUNDING, LLC (hereafter "HMR"), is a Virginia limited liability company doing business at 9211 Forest Hill Avenue, Suite 101 Richmond, Virginia 23235.

3. Defendant, VELOCITY MEDICAL RECEIVABLES SOLUTIONS, LLC (hereafter "VMRS"), is a Delaware limited liability company with a principal place of business at 9211 Arboretum Parkway, Suite 500 Richmond, VA 23236.

4. That the events giving rise to the present action occurred in Macomb County, Michigan.

5. That the amount in controversy exceeds Twenty-Five Thousand Dollars ($25,000.00).

6. Jurisdiction and Venue are proper before this Court.

## BACKGROUND FACTS

7. Plaintiff incorporates and realleges all above paragraphs as if set forth in full herein.

8. Defendants, HMR and VMRS, are in the business of purchasing medical and personal injury receivables and working with clients on collection efforts.

9. Plaintiff is in the business of providing to Defendants potential clients who have a book of receivables which Defendants may choose to purchase.  Upon purchase by Defendant, Plaintiff is to receive a commission.

10. Plaintiff and Defendant, HMR, entered into a Confidential Nondisclosure/Noncircumvent Agreement on or about July 20, 2017.  (Exhibit "A").  The agreement set forth that Plaintiff was to be paid based upon the following:

3. Compensation

In the event the Funder [HMR] agrees to underwrite and purchase from an Introduced Medical Provider accounts receivables presented by ARC during the term of this Agreement, Funder shall pay ARC and Premier for services performed under this agreement as follows:

(a). To be determined and accepted by all three Parties prior to Funder agreeing to purchase receivables, and incorporated hereto by written amendment that shall acknowledge this agreement.

2

(b). Funder agrees and acknowledges that neither ARC nor Premier is hereby making any representation or warranty, express or implied, as to the accuracy or completeness of the information provided and that Funder assumes all underwriting conclusions and responsibilities for the purchases of said accounts receivables. Funder agrees to hold ARC and Premier harmless, and that ARC and Premier shall not be responsible for reimbursement to Funder, for any broker fees, any lost or any under-performed accounts receivables purchased by the Funder.

11. Thereafter, Plaintiff and Defendant, VMRS, entered into a Referral Fee Agreement on or about January 10, 2019. (Exhibit "B"). That agreement was also entered into by and between HMR through the language in the contract and that VMRS was an "Affiliate" as defined in the contract.

12. Specifically, Plaintiff was to be compensated and "Affiliate" is defined as follows:

### 3. Compensation

(a) Finder's Fee. In consideration for the services rendered by Finder [Premier] hereunder, Finder shall receive compensation ("Finder's Fee") on each purchase by Company or Affiliate of a Medical Receivable from an Introduced Medical Provider during the Term of this Agreement, or two years from a termination of this Agreement under Section 9(c), in an amount equal to the product of the funded amount paid by Company or its Affiliate for such Medical Receivable multiplied by the applicable commission percentage set forth on Schedule I; provided that Finder shall not be entitled to receive any Finder's Fees owing but not yet paid following a termination of this Agreement by Company pursuant to Section 9(b). Any Finder's fee that is owing to Finder hereunder shall be paid within ten (10) days of Company or its Affiliate's actual payment to the Introduced Medical Provider of the funded amount for the corresponding Medical Receivables. Upon request, Company shall provide to Finder adequate documentation demonstrating that all Finder's Fee due and owing has been paid.

(b) Payment of Finder's Fee. Company or its Affiliates may consummate the purchase of the Medical Receivable. If Company purchases a Medical Receivable from an Introduced Medical Provider during the Term then only Company shall be obligated to pay the Finder's Fee. If the Affiliate purchases and Medical Receivable from an Introduced Medical Provider during the Term then only the Affiliate shall be obligated to pay the Finder's Fee. For purposes of this Agreement, the term "Affiliate" means any entity that directly or indirectly (through one or more intermediaries) controls, is controlled by, or is under common control with Company.

13. That Defendants HMR and VMRS are Affiliates as defined in Exhibit "B" as the entities are directly or indirectly controlled by or under common control.

14. That Defendant, HMR's, principal is Mark G. Guedri.   Defendant, VMRS's, Chief Executive Officer is also Mark G. Guedri.

### COUNT I – BREACH OF CONTRACT AGAINST HMR AND VMRS

15. Plaintiff incorporates and realleges all above paragraphs as if set forth in full herein.

16. Plaintiff performed all of his obligations pursuant to the contracts as set forth in Exhibits "A" and "B."

17. Pursuant to the Contracts, Plaintiff supplied on numerous occasions to both Defendants, HMR and VMRS, clients whom Defendants purchased medical receivables.  Those clients include, and are not limited to the following:

    a. NextGen

    b. Cresentox

    c. Livonia Pharmacy

    d. First National Rehab

    e. DIPMM

    f. Huraibi

    g. Abi Home Health

    h. Fountain View

    i. Beta/Alpha PT

    j. IINN

    k. Focus Point

    l. Star Pain

    m. Oakland P/T

    n. Choice P/T

    o. Advance Tox

    p. City Express

4

q.  Rite Way Rehab

r.  First Response Transportation

s.  Integra Labs

t.  TX ASC

u.  Dr. Michael Roberts – Orthopedic Surgeon

v.  Mike Molloy

w.  Delta PT

x.  Operation Wellness

y.  SEMI

z.  Med Direct

aa. Star Pain and Rehab – Multiple practices

bb. Focus Point

cc. Blake Barber

18. That Defendants breached the contracts by failing, refusing, and/or neglecting to remit the commissions for the clients procured by Plaintiff pursuant to the contracts.

19. As a direct and proximate result of Defendants' breaches of the contracts, Plaintiff has suffered and continues to suffer damages.

WHEREFORE Plaintiff, PREMIER FINANCIAL CONSULTING, LLC, respectfully requests that this Court enter a Judgment in its favor and against Defendants, HMR FUNDING, LLC and VELOCITY MEDICAL RECEIVABLES SOLUTIONS, LLC, jointly and severally, in an amount in excess of $25,000.00 together with all applicable costs, interest, and attorney's fees, and further order any other such additional relief that this Court deems necessary and just based upon the circumstances herein.

5

## COUNT II – VIOLATION OF THE SALES COMMISSION ACT AGAINST HMR AND VMRS

20. Plaintiff incorporates and realleges all above paragraphs as if set forth in full herein.

21. Plaintiff was engaged by Defendants, HMR and VMRS, as a "Finder" to introduce and procure books of business to Defendants for purchase of medical receivables from clients brought to Defendants through Plaintiff.

22. Defendants agreed to pay to Plaintiff a commission for accounts which Plaintiff introduced and Defendants engaged in purchasing medical receivables pursuant to Exhibit "B" Schedule I – Applicable Commission Percentage.

23. Plaintiff dutifully performed its tasks pursuant to the contracts by "finding" numerous clients whom Defendants engaged and funded including, but not limited to those as set forth in paragraph 17 a – cc.

24. Defendants have failed, refused, and or neglected to pay to Plaintiff the commissions due for the aforementioned sales.

25. Defendants' failure to pay Plaintiff sales commissions entitled Plaintiff to double the amount of commissions due or $100,000.00, whichever is less, as well as mandatory costs and reasonable attorney fees pursuant to MCL §600.2961.

WHEREFORE Plaintiff, PREMIER FINANCIAL CONSULTING, LLC, respectfully requests that this Honorable Court enter Judgment in its favor and against Defendants HMR FUNDING, LLC and VELOCITY MEDICAL RECEIVABLES SOLUTIONS, LLC, jointly and severally, in an amount in excess of $25,000.00 together with all applicable costs, interest, and attorney's fees, and further award any other such additional relief that this Court deems necessary and just based upon the circumstances herein.

6

## COUNT III – ACCOUNTING AGAINST HMR AND VMRS

26. Plaintiff incorporates and realleges all above paragraphs as if set forth in full herein.

27. Plaintiff was engaged by Defendants, HMR and VMRS, as a "Finder" to introduce and procure books of business to Defendants for purchase of medical receivables from clients brought to Defendants through Plaintiff.

28. Plaintiff dutifully performed its tasks pursuant to the contracts by "finding" numerous clients whom Defendants engaged and funded including, but not limited to those as set forth in paragraph 17 a – cc.

29. Defendants have failed, refused, and/or neglected to communicate with Plaintiff in addition to failing to remit commissions pursuant to the contracts. Defendants have ceased making regular reports to Plaintiff. Upon information and belief, Defendants have purchased books of business and funded an unknown number of clients who were presented to Defendants solely through the efforts of Plaintiff.

30. Defendants have failed and refused to provide information, including financial information, regarding the clients which were brought to Defendants through the efforts of Plaintiff.

31. That as a result of the above-stated acts Plaintiff cannot, even with liberal discovery, reasonably be expected to ascertain and determine the extent of business conducted by Defendants in regard to the clients which Plaintiff provided.

32. Furthermore, Plaintiff cannot reasonably ascertain the current accurate status of the clients and potential clients sent through Plaintiff to Defendants due to Defendants' number and varied types of business activities, the technical nature of the business conducted, and the relationships between Defendant and those with whom it has dealt.

7

33. Plaintiff does not know what amounts, if any, may be revealed by such accounting as being owed to Plaintiff and, thus, makes no specific demand for monetary relief at the present time.

WHEREFORE, Plaintiff PREMIER FINANCIAL CONSULTING, LLC, respectfully requests that this Honorable Court enter Judgment in its favor and against Defendants HMR FUNDING, LLC and VELOCITY MEDICAL RECEIVABLES SOLUTIONS, LLC, jointly and severally, to prepare, at their sole expense, a true and accurate accounting of all of the activities and assets of Defendants including but not limited to the clients procured through Plaintiff, all of the activities Defendants have taken in regard to those clients, and the specific purchase and funding amounts Defendants have remitted on behalf of the clients procured through Plaintiff.  In addition, Plaintiff requests this Court to enter a Judgment in its favor and against Defendants, jointly and severally, in an amount in excess of $25,000.00 together with all applicable costs, interest, and attorney's fees, and further award any other such additional relief that this Court deems necessary and just based upon the circumstances herein.

## COUNT IV – COMMON LAW FRAUD AGAINST HMR AND VMRS

34. Plaintiff incorporates and realleges all above paragraphs as if set forth in full herein.

35. During the negotiations of the Referral Fee Agreement, Defendants continually and repeatedly made false, misleading, and untrue statements to Plaintiff.

36. Defendants repeatedly made false, misleading and untrue statements including without limitation, that:

   a. In consideration for the referral services rendered by Plaintiff as outlined above and described in the Referral Fee Agreement, Defendants would compensate Plaintiff on each purchase of a Medical Receivable from an Introduced Medical Provider during the term of the Referral Fee Agreement, or two (2) years from a termination of said agreement,

according to the commission schedule set forth on Schedule I of the Referral Fee Agreement.

b. Any Finder's Fee that is owing to Plaintiff under the Referral Fee Agreement would be timely paid within ten (10) days of actual payment to the Introduced Medical Provider of the funded amount for the corresponding Medical Receivables.

c. That upon request, Defendants would timely provide to Plaintiff adequate documentation demonstrating that all Finder's Fees due and owing under the Referral Fee Agreement have been paid.

d. That Defendants were not conducting business with those clients identified in paragraph 17 a – cc and never purchased medical and/or personal injury receivables from said clients.

37. Defendants knew that Plaintiff was relying upon said statements in entering into the Referral Fee Agreement. However, Defendants never intended to comply with their obligations and with said representations at the time the parties entered into the Referral Fee Agreement.

38. Defendants made false statements to convince Plaintiff to agree and enter into the Referral Fee Agreement.

39. All the above statements, actions and/or inactions by Defendants are false, or made with reckless disregard for the truth.

40. Plaintiff in fact relied on the statements and entered into the above-mentioned Referral Fee Agreement with Defendants.

41. But for the above-mentioned statements, actions and/or inactions by Defendants, Plaintiff would not have entered into a contractual agreement with Defendants.

42. As a result of Plaintiff's reliance on the above-mentioned statements, Plaintiff has suffered damages.

WHEREFORE Plaintiff, PREMIER FINANCIAL CONSULTING, LLC, respectfully requests that this Honorable Court enter Judgment in its favor and against Defendants HMR FUNDING, LLC and VELOCITY MEDICAL RECEIVABLES SOLUTIONS, LLC, jointly and severally, in an amount in excess of $25,000.00 together with all applicable costs, interest, and attorney's fees, and further award any other such additional relief that this Court deems necessary and just based upon the circumstances herein.

### COUNT V – FRAUDULENT INDUCEMENT AGAINST HMR AND VMRS

43. Plaintiff incorporates and realleges all above paragraphs as if set forth in full herein.

44. Numerous fraudulent statements were made by Defendants to induce Plaintiff to enter into the Referral Fee Agreement.

45. As a direct and indirect result of Defendants' fraudulent statements, actions and/or inactions, Plaintiff entered into the Referral Fee Agreement.

46. Defendants made the fraudulent statements intentional or with reckless disregard for the truth to induce Plaintiff to act upon the information.

47. Plaintiff did in fact act and rely upon the fraudulent statements, actions, and/or inactions of Defendants in entering into the Referral Fee Agreement and agreeing to its terms.

48. Plaintiff suffered damages as a result.

WHEREFORE Plaintiff, PREMIER FINANCIAL CONSULTING, LLC, respectfully requests that this Honorable Court enter Judgment in its favor and against Defendants HMR FUNDING, LLC and VELOCITY MEDICAL RECEIVABLES SOLUTIONS, LLC, jointly and severally, in an amount in excess of $25,000.00 together with all applicable costs, interest, and attorney's fees, and further award any other such additional relief that this Court deems necessary and just based upon the circumstances herein.

## COUNT VI: RESCISSION OF CONTRACT AGAINST HMR AND VMRS

49. Plaintiff incorporates by reference all above paragraphs as if set forth in full herein.

50. The Referral Fee Agreement at issue in the instant matter between Plaintiff and Defendants contains a clause contemplating the occurrence of a breach of any representation or warranty thereunder. Exhibit "B" at 9(b).

51. The Referral Fee Agreement further provides that either party may rescind the agreement if the other party "breaches or has not otherwise performed or complied with any of the terms of this Agreement, in whole or in part…" (*Id.*)

52. Based upon the above-outlined allegations of numerous breaches by Defendants, Plaintiff, Premier Financial Consulting, has suffered damages and is entitled to a declaration that the Referral Fee Agreement is rescinded and void *ab initio*.

WHEREFORE, Plaintiff, PREMIER FINANCIAL CONSULTING, LLC, respectfully requests this Honorable Court enter an order rescinding the Referral Fee Agreement, and to further grant Judgment in its favor and against Defendants HMR FUNDING, LLC and VELOCITY MEDICAL RECEIVABLES SOLUTIONS, LLC, jointly and severally, in an amount in excess of $25,000.00 together with all applicable costs, interest, and attorney's fees, and further award any other such additional relief that this Court deems necessary and just based upon the circumstances herein.

11

Respectfully submitted,
THE RUBINSTEIN LAW FIRM

By: _____
Jan Jeffrey Rubinstein (P57937)
Attorney for Plaintiff

Dated: May 21, 2019

## JURY DEMAND

Please Take Notice that Plaintiff, PREMIER FINANCIAL CONSULTING, LLC, hereby makes a demand for a jury trial pursuant to MCR 2.508(B).

Respectfully submitted,
THE RUBINSTEIN LAW FIRM

By: _____
Jan Jeffrey Rubinstein (P57937)
Attorney for Plaintiff

Dated: May 21, 2019

12

# EXHIBIT B

## Affidavit of Jack Robb

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PREMIER FINANCIAL CONSULING,
LLC, a Michigan Limited Liability
Company,

        Plaintiff,

  v.

HMR FUNDING, LLC, a Virginia
Limited Liability Company, and
VELOCITY MEDICAL
RECEIVABLES SOLUTIONS, LLC, A
Delaware Limited Liability Company,

        Defendants.

CASE NO.

Hon

## DECLARATION OF JACK ROBB

1.    My name is Jack Robb. I am an adult and I am in all ways competent to testify. I have read this Declaration, signed by me, and I have personal knowledge of the contents.  If called I can testify to the contents thereof, and I would testify to the best of my knowledge and belief that the matters set forth herein are true.

2.    I am the Chief Operating Officer and Chief Legal Officer of Velocity Medical Receivables Solutions, LLC ("Velocity"), one of the Defendants in this litigation.  I am also the Chief Operating Officer and Chief Legal Officer of HMR

Funding, LLC ("HMRF"), the second Defendant named in the Amended Complaint.

3.    I am familiar with the circumstances regarding the negotiating and signing of the agreement that is attached to the Amended Complaint and identified as the "Referral Fee Agreement."  I am also familiar with the "Confidential Non-Disclosure Non-Circumvent Agreement," which is the second document Plaintiff has attached to the Amended Complaint.

4.    According to paragraph 17 of the Amended Complaint, Plaintiff "supplied on numerous occasions to both Defendants, HMRF and VMRS, clients [from] whom Defendants purchased medical receivables."

5.    Defendants legal position, to be asserted in detail in this litigation, is that no commissions are owed for numerous reasons.  Among other defenses, none of the 29 medical providers and other entities and individuals identified in paragraph 17 qualifies as an "Introduced Medical Provider" within the meaning of Plaintiff's agreement with Defendants, except for "Operation Wellness" which is specifically identified in the Referral Fee Agreement as the only Introduced Medical Provider.  Moreover, in the Referral Fee Agreement Plaintiff released any claims to any additional commissions that Plaintiff claims it earned in the time-period before Plaintiff signed the Referral Fee Agreement.  Neither Velocity, HMRF nor any of their affiliates have purchased medical receivables from

2

Operation Wellness after the signing of the Referral Fee Agreement, and therefore Plaintiff is not entitled to any commissions related to Operation Wellness.  No new medical provider has become an Introduced Medical Provider since the signing of the Referral Fee Agreement.

6.     HMRF and Velocity's affiliated funds have purchased medical receivables from some of the medical providers that Plaintiff identifies in paragraph 17 of its Complaint.  Plaintiff has been some paid hundreds of thousands of dollars in commissions related to these purchases.

7.     If Plaintiff prevails on its claims that the Referral Fee Agreement is not enforceable, that it did not release and waive the claims made in this lawsuit, and that otherwise a basis exists for Plaintiff to be paid commissions related to purchases of medical receivables from the medical providers Plaintiff identifies in paragraph 17 of its Complaint, however, then Plaintiff could be entitled to additional commissions.

8.     I have calculated the additional commissions that Plaintiff claims it is entitled to, according to the Amended Complaint.  The amount of additional commissions that Plaintiff claims it is entitled to, claims that Defendants vigorously deny, exceeds $150,000.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 20th day of June, 2019 in Richmond, Virginia.

3

Jack Robb

# EXHIBIT C

## Notice of Filing Removal

## STATE OF MICHIGAN
## IN THE MACOMB COUNTY CIRCUIT COURT

PREMIER FINANCIAL
CONSULTING, LLC, a Michigan
limited liability company,

     Plaintiff,                               Hon. Carl J. Marlinga

v.                                            Case No.: 19-1516-CK

HMR FUNDING, LLC, a Virginia
limited liability company, VELOCITY
MEDICAL RECEIVABLES
SOLUTIONS, LLC, a Delaware
limited liability company,

     Defendants.

| | |
|---|---|
| Jan Jeffrey Rubinstein (P57937) | Evan A. Burkholder (P67986) |
| Ryan P. Richardville (P77335) | Lesley Yulkowski (P68136) |
| THE RUBINSTEIN LAW FIRM | O'HAGAN MEYER PLLC |
| Attorneys for Plaintiff | Attorneys for Defendants |
| 30150 Telegraph Rd., Suite 444 | 22260 Haggerty Rd. Ste 110 |
| Bingham Farms, MI 48025 | Northville, MI 48167 |
| (248) 220-1415 | 248-972-6876 (o) |
| jjr@therubinsteinlawfirm.com | eburkholder@ohaganmeyer.com |
| rr@therubinsteinlawfirm.com | lyulkowski@ohaganmeyer.com |

## NOTICE OF REMOVAL

     PLEASE TAKE NOTICE THAT Defendants HMR Funding, LLC, and

Velocity Medical Receivable Solutions, LLC ("HMR" and "VMR") have filed a

Notice of Removal, copies of which are attached hereto, in the offices of the Clerk

of the United States District Court, Eastern District of Michigan, Southern

Division, at 231 W. Lafayette Blvd., Detroit, Michigan.

Respectfully submitted,

**O'HAGAN MEYER**

By: s/ Evan A. Burkholder

Evan A. Burkholder (P67986)
Lesley A. Yulkowski (P68136)
O'HAGAN MEYER
22260 Haggerty Rd. Ste. 110
Northville, MI 48167
248-896-1801

**Attorneys for HMR Funding, LLC, and**
**Velocity Medical Receivables Solutions, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on June 20, 2019, I electronically filed the foregoing

with the Clerk of Court which will send notification of such filing to all counsel of

record. Copies have also been electronically served on all counsel of record.

s/ Evan A. Burkholder